IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:25-CV-00521-M-KS

CHARLES W. PEMBLE, IV,

     Plaintiff,

v.

HEXOS, INC. and
GEORGE EDWARD MURGITROYD,

     Defendants.

ORDER

This is a copyright dispute. Plaintiff, who previously worked for Defendant Hexos, Inc. ("Hexos") as its Chief Commercialization Officer and Chief Executive Officer, claims that Hexos' continued use of its logo, name, and taglines ("the Creative Works"), infringes on Plaintiff's interests in those materials. DE 1 ¶ 82. Underlying that claim is Plaintiff's broader contention that he is "the sole author" of the Creative Works, which he "created independently and outside the scope of employment, with no written assignment executed." DE 1 ¶ 82. To correct for this alleged wrong, Plaintiff brings a federal copyright infringement claim under 17 U.S.C. § 501 and 17 U.S.C. § 506(e) (Second Claim for Relief) and various state law claims (First, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief). *See generally* DE 1 at 24–29. Pending before the court are Defendants' Motion to Dismiss, DE 15, and United States Magistrate Judge Kimberly A. Swank's Memorandum and Recommendation ("M&R") regarding that Motion, DE 42. Judge Swank explains that Plaintiff does not own a copyright and, therefore, recommends dismissing Plaintiff's federal claims for lack of Article III standing, or alternatively for failure to state a claim, and declining to exercise supplemental jurisdiction over the remaining state law claims. DE 42.

<u>I. Factual and Procedural History</u>[1]

On July 10, 2020, Hexos recruited Plaintiff to join the company as Vice President of Sales after having negotiated the terms of that employment via text message. DE 1 ¶ 26. On August 1, 2020, (and before Plaintiff had signed a formal employment contract regarding his role as Vice President of Sales) Hexos promoted Plaintiff to Chief Commercialization Officer ("CCO"). DE 1 ¶ 26, DE 1-1 at 1. On that day, Plaintiff signed a fully executed employment contract (the "Agreement") outlining his roles and responsibilities as CCO and governing the assignment of various rights. *See generally* DE 1-10. As defined in the Agreement, Hexos expected Plaintiff, in his capacity as CCO, to specifically "develop and implement commercial strategies," "run and conduct sales and marketing," and "collaborate with and coordinate diverse teams (marketing, sales, customer service etc.)." DE 1-10 at 7. And Hexos broadly tasked Plaintiff with "add[ing] value to [its] growth activities by identifying new commercial opportunities and managing marketing efforts." DE 1-10 at 7.

Relevant here, the Agreement also contained four provision explicitly governing "Inventions:"

> 3.1.  The Employee agrees from time to time to promptly and fully inform and disclose to the Company all inventions, designs, improvements and discoveries which the Employee now has, or may have during the Employee's employment, developed, conceived or reduced to practice, which pertain to or relate to the Company or to any experimental work performed by the Company, whether conceived by the Employee alone or with others and whether or not conceived during regular working hours (the "Inventions").

---

[1] Consistent with the legal standard on a motion to dismiss, these facts are as alleged in the Complaint and within documents attached to the Complaint. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016) ("In ruling on a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.") (cleaned up).

2

3.2.	All Inventions, and any and all rights, interests and title therein, shall be the exclusive property of the Company and the Employee shall not be entitled, and hereby waives now and/or in the future, any claim to any right, compensation and/or reward in connection therewith.

3.3.	In the event that any Invention shall be deemed the Employee's in whole or part, the Employee hereby assigns and shall in the future take all the requisite steps (including by way of illustration only, signing all appropriate documents) to assign to the Company and/or its designee any and all of his/her rights, titles and interests, on a worldwide basis and hereby further acknowledges and shall in the future acknowledge the Company's full and exclusive ownership in all Inventions. . . .

3.4.	Subject to applicable law, Employee understands that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to: (i) any Invention that Employee developed entirely on his/her own time without using Company's equipment, supplies, facilities, trade secret information or Confidential Information (an "Other Invention") except for those Other Inventions that either (a) relate at the time of conception or reduction to practice of such Other Invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (b) result from any work that he/she performed for the Company. . . .

DE 1-10 at 12–13.

After signing that agreement, and while working as Hexos' CCO, Plaintiff "created the Hexos brand identity." DE 1 ¶ 38. That included developing the Creative Works at issue in this matter. Plaintiff came up with the name "Hexos" sometime during November 17, 2020, to November 19, 2020, designed Hexos' logo between January 31, 2021, and February 8, 2021, and crafted Hexos' marketing taglines on or about February 4, 2021. DE 1 ¶ 38; *see also* DE 1-4, DE 1-5. Hexos filed to perfect intellectual property interests—either trademarks or copyrights, as appropriate—in each of the Creative Works between December, 2020, and August, 2021. *See* DE 1-6 at 7.

3

Hexos, apparently pleased with Plaintiff's work as CCO, promoted him to the role of Chief Executive Officer on August 29, 2022. But the relationship quickly soured, and, on September 7, 2022, Hexos terminated Plaintiff "for cause." DE 1 ¶ 33, DE 1-13.

A little less than three years later, on August 25, 2025, Plaintiff filed this lawsuit. He seeks damages extending from the alleged misuse of the copyrighted Creative Works and damages for the breach of his employment contract; broadly, Plaintiff contends he has not received the benefit of the phantom equity plan promised to him as CCO and CEO. DE 1 ¶¶ 112–144. Two months later, on October 31, Defendants moved to dismiss the complaint. DE 15. The court referred that Motion to Judge Swank for an M&R, which she prepared. DE 42.

As explained above, Judge Swank recommends granting Defendants' Motion to Dismiss because Plaintiff does not have a protected interest in the Creative Works. DE 42. She reached that conclusion for two reasons. First, "Plaintiff agreed at the beginning of his employment that the creative works at issue here would be the exclusive property of Hexos" and "waived all rights to any Hexos-related works created during his employment." DE 42 at 6. Second, "any work produced by Plaintiff as an employee of Hexos and in furtherance of his employment is 'work made for hire.'" DE 42 at 6 (citing 17 U.S.C. § 201(b) and *McKenna v. Lee*, 318 F. Supp. 2d 296, 299 (E.D.N.C.)). Accordingly, Judge Swank recommends dismissing Plaintiff's complaint either because it "fails to plausibly allege ownership of a copyright in the creative works, and, therefore, Plaintiff lacks standing to bring a claim of copyright infringement," thus depriving the court of "subject-matter jurisdiction," or, alternatively, because the complaint "fails to state a claim for copyright infringement," as "[P]laintiff fails to sufficiently allege ownership of a copyright." DE 42 at 7–8. Based on her conclusion that the court lacks subject matter jurisdiction over the copyright claims, Judge Swank recommends dismissing Plaintiff's state law claims—explaining

4

that as there are "no claims over which this court has original jurisdiction, the court cannot exercise supplemental jurisdiction" over the state law claims.

Plaintiff filed objections to the M&R. DE 43. While Plaintiff has filed specific objections to each part of the M&R, he summarizes his objections as follows:

> **Contractual Error** — The M&R enforces Sections 3.1–3.3 of the Inventions Agreement while omitting Section 3.4, which expressly limits assignment and directly applies to Plaintiff's allegations.

> **Procedural Error** — The M&R resolves disputed issues of copyright ownership on a Rule 12(b)(l) motion, contrary to Fourth Circuit law prohibiting dismissal where jurisdictional facts are intertwined with the merits.

> **Analytical Error** — The M&R fails to apply the Supreme Court's multi-factor test for work-for-hire status under *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), instead substituting a conclusory determination.

DE 42 at 2. Accordingly, this matter is ripe for consideration.

## II. Applicable Standards

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Because Plaintiff has lodged specific objections to the M&R, the court will address Defendant's Motion to Dismiss *de novo*.

Broadly, Defendants argue that the court should dismiss this matter pursuant to either Rule 12(b)(1) or Rule 12(b)(6) because Plaintiff does not own a copyright in the Creative Works. The

5

Copyright Act only allows the owner of a copyright to bring suit for its infringement, so, the argument goes, the statute forecloses Plaintiff—who allegedly does not own a copyright—from bringing his suit. Thus, Defendants contend, he either lacks standing to sue or has failed to state a claim upon which relief can be granted. That argument poses two important questions: first, whether copyright ownership may be addressed on a Rule 12 motion, and second, if so, whether it should be addressed under Rule 12(b)(1) or Rule 12(b)(6).

The Copyright Act endows only "the legal or beneficial owner of an exclusive right under a copyright" with the license "to institute an action for any infringement of that particular right." *See* 17 U.S.C. § 501(b). Accordingly, courts have generally held that "[t]he issue of ownership goes to standing to bring a copyright action." *See, e.g., Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 487 (1st Cir. 1985); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017) ("Indeed, it is the plaintiff who has the burden of establishing a qualifying ownership interest both as a substantive element of the infringement claim . . . and as a necessary predicate for standing to bring the claim . . . .").

Consistent with that principle, trial courts, including those in the Fourth Circuit, have consistently addressed copyright ownership on Rule 12 Motions. *See, e.g., Michael Pellis Architecture PLC v. M.L. Bell Constr. LLC*, 693 F. Supp. 3d 594, 603 (E.D. Va. 2023) ("Defendants argue that Mr. Pellis lacks standing to sue for copyright infringement, because Mr. Pellis does not own a copyright to the Work. [] The Court agrees and . . . therefore [grants] Defendants' Motion to Dismiss . . . ."); *Nutter v. Clear Channel Commc'ns, Inc.*, No. 505CV65, 2006 WL 2792903, at *5 (N.D.W. Va. Sept. 26, 2006) ("Plaintiff's copyright infringement claims . . . are [dismissed] for lack of standing."). While the Fourth Circuit has not explicitly held whether Rule 12 is an appropriate vehicle to address copyright ownership, it has explained that "[a] valid

6

copyright registration is required to bring a copyright infringement claim." *Philpot v. Indep. J. Rev.*, 92 F.4th 252, 263 (2024) (affirming the trial court's grant of summary judgment). The court, therefore, finds that copyright ownership may appropriately be addressed in a motion to dismiss under Rule 12.

The question remains, which of Rule 12(b)(1) or Rule 12(b)(6) provides the more appropriate vehicle to address Defendants' argument. As explained below, the court concludes that 12(b)(6) presents the better option.

Traditionally, a motion to dismiss under Rule 12(b)(1) for lack of standing tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). The Constitution empowers federal courts to hear only certain "cases" or "controversies." U.S. Const. Art III § 2. The "essence" of so-called Article III standing, which asks whether a given litigant has brought such a case or controversy, "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Because the court has no power to adjudicate a non-case or a non-controversy, the court has no subject-matter jurisdiction over such a claim, and a litigant is not entitled to have the court decide the claim's merits.

However, although whether a litigant has pled a "case" or "controversy" is jurisdictional, whether a litigant has a valid "cause of action under [a] statute" is not. *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). While many courts, including the Supreme Court, have referred to this second inquiry as "statutory standing," the Court has since rejected that description as "misleading," explaining that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory

or constitutional *power* to adjudicate the case." *Id.* at 128, n.4 (emphasis in original) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 642–643 (2002)) (citation omitted). Instead, a "district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Steel Co.*, 523 U.S. at 89 (1998) (citations omitted) (internal quotations omitted). In other words, whether a litigant has a cause of action under a statute does not implicate the court's subject matter jurisdiction over cases and controversies under Article III.

Consistent with *Lexmark*, some circuits have held that, because ownership of a copyright implicates statutory, and not Article III, standing, it is appropriately addressed in a motion to dismiss for failure to state a claim, rather than for lack of subject-matter jurisdiction. The Ninth Circuit, for example, has explained that "whether [a claimant] has a statutory right to sue for infringement under the Copyright Act, . . . is properly addressed in a motion under Rule 12(b)(6);" in contrast "whether [the plaintiff] has satisfied the requirements of Article III, . . . is properly addressed in a motion under Rule 12(b)(1)." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015). Likewise, the Second Circuit has differentiated between "the right to sue" under the Copyright Act, i.e. "statutory standing," and "Article III standing." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 402 (2d Cir. 2018). And in addressing a thematically similar issue in a patent case, the Federal Circuit "firmly [brought] [its self] into accord with *Lexmark* and [other] circuits by concluding that whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019).

8

The Fourth Circuit has not addressed this specific issue. But it has counseled caution when addressing on jurisdictional grounds the same issues as would ultimately be addressed on the merits. Indeed, when the "jurisdictional facts are intertwined with the facts central to the merits of the dispute," a trial court should resolve "the entire factual dispute . . . appropriately . . . by a proceeding on the merits." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("[N]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction[;] [j]udicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.") (quoting *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981)). Addressing whether Plaintiff owns the alleged copyright on a 12(b)(1) motion is exactly the scenario imagined by that caselaw. *See, e.g., Kerns v. United States* (Because the scope-of-employment issue is determinative of both jurisdiction and the underlying merits of an FTCA claim, dismissal under Rule 12(b)(1) is inappropriate . . . .).

Accordingly, the court will address Defendants' argument that Plaintiff does not own a copyright in the Creative Works through their 12(b)(6) motion rather than 12(b)(1) motion. This has the added benefit, in the words of the Fifth Circuit, of providing "a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim," because proceeding under Rule 12(b)(6) "place[s] greater restrictions on the district court's discretion." *Williamson*, 645 F.2d at 415.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556

9

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that, although its ruling "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," that ruling "does not unlock the doors of discovery for a [litigant] armed with nothing more than conclusions." *Cf. id.* at 678–79.

To survive a Rule 12(b)(6) motion, the claimant's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a claimant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)). Importantly, the court's duty to accept a plaintiff's well-pleaded factual allegations does not extend to "allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). And the court need not accept as true legal conclusions disguised as factual allegations. *Iqbal,* 556 U.S. at 679–81.

To state a copyright infringement claim, a plaintiff must allege (1) ownership of a valid copyright and (2) that the copyright was infringed. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361; 17 U.S.C. § 501. "Copyright in a work . . . vests initially in the author . . . of the

work.  17 U.S.C. § 201(a).  But "[i]n the case of a work made for hire, the employer . . . for whom the work was prepared is considered the author . . . , and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."  *Id.* § 201(b).  Under the statute, a "work made for hire is . . . a work prepared by an employee within the scope of his or her employment."  *Id.* § 101.  To show that the creation of a work was within the scope of employment, an employer must show that (1) the work is of the type for which the employee was hired to perform; (2) the creation of the design occurred "substantially within the authorized time and space limits" of the job; and (3) it was "actuated, at least in part, by a purpose to serve" the employer's interests.  *See Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir. 1994) (quoting *Rest. 2d Agency* § 228 (1958)).

### III. Discussion

As an initial matter, because the court has found that it may appropriately address copyright ownership in a motion to dismiss under Rule 12, Plaintiff's objections regarding any "Procedural Error" in so proceeding are OVERRULED.  Additionally, Plaintiff's objections regarding "Contractual Error" and "Analytical Error" are OVERRULED.  Plaintiff does not have copyright in the Creative Works.  As Judge Swank correctly explained, the Creative Works are works for hire, and, even if they are not, Plaintiff expressly transferred any right in the Creative Works to Hexos.  The court will explain each of those findings in greater detail below.

As explained above, an employer is the author of works made by its employees, and therefore has copyright in those works, 17 U.S.C. § 201(b), when the work is "prepared by an employee within the scope of his or her employment," *id.* § 101.  The Supreme Court has held that "§ 101(1)'s use of the term, 'scope of employment,' a widely used term of art in agency law," evidences "Congress' intent to incorporate the agency law definition" of scope of employment.

11

*Cf. Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (citation omitted). Thus, To show that the creation of a work was within the scope of employment, an employer must show that (1) the work is of the type for which the employee was hired to perform; (2) the creation of the design occurred "substantially within the authorized time and space limits" of the job; and (3) it was "actuated, at least in part, by a purpose to serve" the employer's interests. *See Avtec Sys., Inc.*, 21 F.3d at 571.

A brief aside, Plaintiff argues that Judge Swank erred by not proceeding through a step-by-step analysis of the twelve factors identified in *Reid. See Reid*, 490 U.S. at 751–52. This is incorrect. That argument misunderstands the *Reid* factors, which guide a court's inquiry into whether "the hiring party's right to control the manner and means by which the product is accomplished." *Id.* at 751. In other words, the factors help illustrate whether one is an employee, and not whether one acts within the scope of their employment. *See id.* As the Court explained alongside the factors, their inclusion expressly "reject[ed] the suggestion . . . that the . . . term 'employee' refers *only* to formal, salaried employees." *Id.* at 742 n. 8 (emphasis added). To that same end, the Fourth Circuit "has embraced a more flexible definition of the word 'employ,'" nothing that it "has a broad sweep and is expansively used." *United States v. Weaver*, 659 F.3d 353, 357–58 (4th Cir. 2011) (citing *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994)). In this case, however, such an analysis is unnecessary because Plaintiff presents the quintessential example of an employee. Indeed, Plaintiff has provided the court with copies of his Employment Contracts. *See* DE 1-10, DE 1-11.

Accordingly, the sole dispositive issue is whether Plaintiff crafted the Creative Works while acting within the scope of his employment. Plaintiff argues he did not, highlighting that he "created the works on his personal laptop using free trial design software . . . outside of business

12

hours," and that "[t]he CCO job description contains no reference to brand development, logo design, graphic design, or any creative work." *See* DE 43 at 9. Those arguments, however, are unpersuasive.

The crafting of a logo, name, and marketing taglines is clearly work of the type for which Plaintiff was hired to perform. *Avtec Sys., Inc.*, 21 F.3d at 571. Plaintiff's "Principal Responsibilities" as Chief Commercialization Officer included "add[ing] value to [its] growth activities by identifying new commercial opportunities and managing marketing efforts," "be[ing] a creative strategist," and "run[ning] and conduct[ing] sales and marketing." DE 1-10 at 7. Even if Plaintiff was not hired specifically as a graphic designer or marketing copywriter, each of his responsibilities as CCO necessarily includes the management of Hexos' name, logo, and marketing taglines. After all, Plaintiff could not oversee the commercialization of Hexos without a logo, name, or marketing campaign. Accordingly, the first factor is met.

Likewise, the creative works were made "within the authorized time and space limits" of his role as CCO. *Avtec Sys., Inc.*, 21 F.3d at 571. "[T]he fact that a work is created off-site, during non-working hours does not automatically remove the work from the scope of employment." *McKenna v. Lee*, 318 F. Supp. 2d 296, 301 (E.D.N.C.), *aff'd*, 53 F. App'x 268 (4th Cir. 2002) (collecting cases). And as delineated in the Agreement, Plaintiff's role as CCO was a "full-time position" paid a monthly (rather than hourly) salary, DE 1-10 at 1; none of which indicates that Plaintiff left the authorized time and space limits of his employment when regular business hours ended. Indeed, common practice counsels that, as a member of the C-Suite for a tech startup, Plaintiff could rarely be considered beyond the special limits of his employment. Accordingly, the second factor favors a finding that Plaintiff acted within the scope of his employment.

Finally, and most importantly, Plaintiff designed the Creative Works "at least in part, by a purpose to serve" Hexos' interests. *See Avtec Sys., Inc.*, 21 F.3d at 571. In Plaintiff's Complaint, he describes the facts giving rise to his decision to design the Creative Works; Hexos "[f]aced . . . the urgent risk of losing its brand identity" because of "a forced rebrand following an opposition proceeding filed by a Spanish intellectual property firm against [Hexos'] original name, FreshAir IP," and, in light of that "urgent risk," Plaintiff designed the Creative Works. DE 1 ¶ 3. In his objections to the M&R, Plaintiff adds a little more shading to the story, explaining that before he crafted the works, "Hexos first engaged an outside branding firm, and then retained an independent graphic design contractor, specifically to design the company's logo," but "[b]oth efforts failed," and "Plaintiff voluntarily create[d] the logo . . . ." DE 43 at 9. Although Plaintiff's factual allegations establish that Plaintiff may have designed the logo on his own initiative, no part of that story indicates that Plaintiff crafted the Works for any purpose other than serving Hexos. That Plaintiff voluntarily designed his employer a new logo, name, and marketing strategy when the employer faced a forced rebrand, and where outside had failed to craft those materials, only strengthens the notion that Plaintiff worked to benefit Hexos. Accordingly, the third factor favors a finding that Plaintiff designed the Creative Works while acting within the scope of his employment.

Alternatively, even if the Creative Works are not works for hire under the statute—meaning Plaintiff was their legal author, the Agreement unambiguously transfers Plaintiff's rights in the Creative Works to Hexos. As highlighted above, under the inventions clauses within the Agreement, Plaintiff agreed that "[a]ll Inventions, and any and all rights, interests and title therein, shall be the exclusive property of [Hexos];" "[i]n the event that any Invention shall be deemed [Plaintiff's] . . . , [Plaintiff] hereby assigns . . . to [Hexos] any and all of his[] rights;" and "the

14

provisions of [the Agreement] requiring assignment of Inventions to [Hexos] do not apply to: (i) any Invention that [Plaintiff] developed entirely on his[] own time . . . (an "Other Invention") except for those Other Inventions that . . . relate at the time of conception or reduction to practice . . . to [Hexos'] business." DE 1-10 at 12–13. Plaintiff does not deny that the Creative Works are inventions. He instead contends that the Creative Works are "Other Inventions" under that final clause. DE 43 at 4. That is a distinction in search of a difference. Regardless of if the Creative Works were "Other Inventions," there can be no doubt that they "relate at the time of conception or reduction to practice . . . to [Hexos'] business." DE 1-10 at 13. A company's logo, name, and taglines necessarily relate to its business the instant they are put in place (i.e. "reduc[ed] to practice"). As such, Plaintiff assigned his rights in the Creative Works regardless of which clause governed them.

Accordingly, Plaintiff's objections are OVERRULED and the M&R is ADOPTED IN PART. Plaintiff does not own a copyright in the Creative Works, so he cannot state a claim for copyright infringement. *Cf.* 17 U.S.C. § 501(b). Defendant's Motion to Dismiss Plaintiff's copyright claims (Count 2), is, therefore, GRANTED. Plaintiff's copyright claims are DISMISSED. Because the court has dismissed Plaintiff's copyright claims, i.e. the only "claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3). And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). In deference to that guidance, the court will decline

15

to exercise supplemental jurisdiction over Plaintiff's remaining claims. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to close this case.

Notwithstanding that direction, the court notes Defendants' yet-pending Motion for Attorney's fees. DE 50. Based on the docket, Plaintiff's response to that Motion is due on or before June 11, 2026. The court intends to address Defendants' Motion once Plaintiff has the chance to be heard. *See Cross v. Bragg*, 329 F. App'x 443, 458 (4th Cir. 2009) ("It is manifest that the federal courts prefer to conduct attorney's fee proceedings after the entry of a final judgment.").

SO ORDERED this _____4th_____ day of June, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE